# Exhibit 1

**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Peter Strojnik, | No. CV-20-01532-PHX-DJH |
| Plaintiff, | No. CV-20-00343-PHX-DJH |
| | No. CV-20-01434-PHX-DJH |
| v. | **ORDER** |
| Driftwood Hospitality Management LLC, et al., | |
| Defendants. | |

Pending before the Court in this consolidated action[1] are three Motions in which Defendants argue that *pro se* Plaintiff Peter Strojnik lacks standing to bring his claims under the Americans with Disabilities Act ("ADA").[2]  Additionally, all Defendants have

_____

[1] The cases assigned to this Court include: *Strojnik v. New Crescent Investments LLC*, No. CV-20-00343 (D. Ariz. filed Feb. 14, 2020) ("Crescent"); *Strojnik v. Xenia Hotels and Resorts Inc.*, No. CV-20-01434 (D. Ariz. filed July 21, 2020) ("Xenia").

[2] Defendants Driftwood Hospitality Management LLC, *et al.*, filed a Motion to Dismiss (Doc. 12) and Defendants have Replied (Doc. 19).  Defendant New Crescent Investments, LLC, filed a Motion for Summary Judgment (Crescent, Doc. 47), to which Mr. Strojnik has filed a Response (*Id.*, Doc. 49) and Defendant Replied (*Id.*, Doc. 55).  Defendants Xenia Hotels and Resorts Inc., *et al.* ("Xenia"), have also filed a Motion to Dismiss (Xenia, Doc. 8), which has been followed by Mr. Strojnik's Response (*Id.*, Doc. 15) and Defendants' Reply (*Id.*, Doc. 20).  While Xenia requested oral argument on their Motion to Dismiss and Motion to Declare Plaintiff a Vexatious Litigant, the Court denies the requests because the issues have been fully briefed and oral argument will not aid the Court's decision.  *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

filed Motions to Declare Plaintiff a Vexatious Litigant ("Vexatious Litigant Motions") (Doc. 17; Crescent, Doc. 51; Xenia, Doc. 22).[3]  The parties have fully briefed the Court on both matters.  For the reasons that follow, the Court will dismiss this case.  The Court will also grant Defendants' Motions to Declare Plaintiff a Vexatious Litigant.

## I.      The Americans with Disabilities Act

Congress enacted the ADA "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(2).  It was designed to protect disabled individuals from facing "subtle" discrimination, such as "difficult-to-navigate restrooms and hard-to-open doors." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011).  This kind of discrimination interferes with a disabled individual's "full and equal enjoyment" of public accommodations.  *Id.* (quoting 42 U.S.C. § 12182(a)).

Both the Department of Justice and "any person who is being subjected to discrimination on the basis of disability" may bring a civil action against public accommodations, such as hotels, that violate ADA standards.  42 U.S.C. §§ 12181(7)(A), 12188.  Like other civil rights causes of action, a private ADA plaintiff's relief is limited to an injunction and an award for costs.  42 U.S.C. § 2000a-3; *Molski v. Evergreen Dynasty Corp.* ("*Evergreen*"), 500 F.3d 1047, 1061–62 (9th Cir. 2007).  An ADA plaintiff cannot recover damages.  *Evergreen*, 500 F.3d at 1061–62.  If a plaintiff successfully obtains an injunction to remedy the discrimination, "he does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority."  *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968).

Without damages, an ADA plaintiff's only incentive to try a case on the merits is to vindicate the rights of the marginalized.  *See Evergreen*, 500 F.3d at 1062 ("We recognize that the unavailability of damages reduces or removes the incentive for most disabled persons who are injured by inaccessible places of public accommodation to bring suit under

---

[3] Mr. Strojnik's filed his Responses (Doc. 18; Crescent, Doc. 52; Xenia, Doc. 24). And Defendants filed their Replies (Doc. 20; Crescent, Doc. 56; Xenia, Doc. 26).

the ADA."). If ADA plaintiffs were forced to bear the full cost of litigation, including paying attorneys, such suits would be economically unviable. Many ADA attorneys, too, cannot survive on ideological motivation alone. To address this problem, Congress allowed the prevailing party in an ADA action to receive an award of attorney's fees. 42 U.S.C. § 2000a-3; *see also Newman*, 390 U.S. at 402 (noting that "Congress therefore enacted the provision for counsel fees—not simply to penalize litigants who deliberately advance arguments they know to be untenable but, more broadly, to encourage individuals" to bring actions).

By providing financial incentives, Congress helped create a market for ADA litigation, or, as some call it, a "cottage industry." *See Rodriguez v. Investco, LLC*, 305 F. Supp. 2d 1278, 1280 (M.D. Fla. 2004). Whatever kind of market it is, it surely is limited to a few participants. As courts and commentators have noted, even with the prospect of a fee award, most attorneys will not take on ADA cases because the cost of a single ADA case is seldom justifiable. As a result, the ADA caters to serial litigants by encouraging a high volume of cases. *Evergreen*, 500 F.3d at 1062 ("For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA."); Samuel R. Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 UCLA L. Rev. 1, 13 (2006) (noting that the ADA's incentive structure favors serial litigants).

In practice, these serial litigants come in different forms. Some, ADA "testers," go about intentionally looking for ADA violations to remedy through litigation, a prerogative that gives these litigants legal standing in court. *See C.R. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 867 F.3d 1093, 1102 (9th Cir. 2017) (holding that a plaintiff's status as an ADA tester does not deprive him or her of standing to bring a claim). Others, however, are vexatious serial litigants whose claims frustrate the ADA's central purpose.

These vexatious ADA litigants are characterized by "[f]alse or grossly exaggerated claims of injury, especially when made with the *intent to coerce settlement . . . .*"

- 3 -

*Evergreen*, 500 F.3d at 1062 (emphasis added).  No legal barrier prevents parties from settling ADA cases.  And generally, federal courts encourage settlement before trial. *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989).  "Since it obviously eases crowded court dockets and results in savings to the litigants and the judicial system, settlement should be facilitated at as early a stage of the litigation as possible." Fed. R. Civ. P. 16(c) advisory committee's note to 1983 amendment.  Indeed, ADA plaintiffs may also prefer settlement to trial because, in a settlement agreement, plaintiffs may receive a monetary award and their attorneys may still receive an award of attorney's fees.  *See e.g., Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1137 (9th Cir. 2002) (holding that a plaintiff's attorney could receive an award of fees after the settlement of a case, which included an ADA claim, awarded $10,000 for the plaintiff).  Put another way, serial ADA plaintiffs themselves face a strong financial incentive to avoid trial, possibly forgoing injunctive relief and failing to vindicate the rights of the disabled as a whole.

## II.  Factual Background

Before Mr. Strojnik was an ADA litigant, he was a serial ADA litigator known for his "extortionate" and "pervasive" lawsuits.  *Advocs. for Individuals with Disabilities, LLC v. MidFirst Bank* ("*MidFirst*"), 279 F. Supp. 3d. 891, 893 (D. Ariz. 2017).  Now, *pro se* Plaintiff Mr. Strojnik brings these actions as an "ADA Tester and a consumer of hotel lodging services." (Doc. 1-3 at 13).  According to his Complaints, his disabilities, his infirmities, and the resulting impairments to his major life activities are legion.  (*Id.* at 15–18; Xenia, Doc. 1-3 at 9–11).  He claims that architectural features that do not comply with certain ADA standards for Accessibility and Design cause him to experience "pain and discomfort."  (Doc. 1-3 at 18–21).

Here is an example of Mr. Strojnik's testing routine: In July of 2020, he investigated two hotels in the Phoenix area, the Holiday Inn Phoenix West and the DoubleTree by Hilton Hotel.  (*Id.* at 13, 21–44).  First, Mr. Strojnik inspected the hotel's websites for information on their ADA accommodations.  (*Id.* at 21–26, 32–35).  Then he visited the hotels where he discovered and photographed many alleged barriers denying him "full and equal" access

to the premises such that he now alleges he is "deterred" from booking rooms at either hotel. (*Id.*)  The other Complaints filed show practically identical testing procedures, and they contain practically identical allegations. (*See* Crescent, Doc. 1-3; Xenia, Doc. 1-3).

The named Defendants all own or operate hotels in the Phoenix area. (Doc. 1-3 at 13–14; Crescent, Doc. 1-3 at 2; Xenia, Doc. 1-3 at 7).  In their Vexatious Litigant Motions, Defendants note Mr. Strojnik's practice of offering to settle matters for monetary awards. (Doc. 17 at 4; Crescent, Doc. 51 at 1; Xenia, Doc. 22 at 3).  In one letter to Defendant New Crescent Investments, LLC ("New Crescent"), Mr. Strojnik demanded to settle a suit for $22,850.00 and offered to "sweeten the pot" for Defendant with a "no visit clause for an additional $5,000.00."  (Crescent, Doc. 51-7 at 7).  The offer does not require that Defendant fix every alleged ADA violation, only that it use "best efforts to remediate readily achievable remediations."  (*Id.*)

Each of the three Complaints contains a claim alleging violations of the ADA.  (Doc. 1-3 at 45; Crescent, Doc. 1-3 at 3; Xenia, Doc. 1-3 at 44).  No Complaint is exactly the same; each contains its own mutations.  In one Complaint, for example, Mr. Strojnik alleges that he purchased stock in Defendant Xenia Hotels and Resort's company and claims Defendant committed securities fraud by misrepresenting their ADA compliance. (Xenia, Doc. 1-3 at 41–44).  In another, he alleges that a Defendant negligently misrepresented their ADA compliance.  (Doc. 1-3 at 47).  Strangely, in all cases, Mr. Strojnik requests attorney's fees.  (Doc. 1-3 at 46; Crescent, Doc. 1-3 at 6; Xenia, Doc. 1-3 at 48).  No Complaint explains how the Court may grant a *pro se* litigant attorney's fees. *See Kay v. Ehrler*, 499 U.S. 432, 438 (1991).

Defendants all argue Mr. Strojnik lacks standing to bring an ADA claim.  (Doc. 12 at 2; Crescent, Doc. 47 at 7; Xenia, Doc. 8 at 6).  They also argue that his accompanying fraud and negligence claims also fail as a matter of law.  (Doc. 12 at 13; Crescent, Doc. 47 at 15; Xenia, Doc. 8 at 13).  The Court will first address whether Mr. Strojnik has standing to bring his claims, and then it will address the Vexatious Litigant Motions.

/ / /

## III.     Subject-Matter Jurisdiction & Standing

Defendants pursue their standing arguments through Motions to Dismiss and a Motion for Summary Judgment.  Courts, too, may raise the issue of subject-matter jurisdiction and standing on their own.  *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).  In fact, this Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."  *Id.* at 514 (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).  Therefore, to avoid mixing different motions, the Court will assess standing on its own motion and take into consideration the parties' standing arguments.

### a.  ADA Standing Requirements

The Constitution and federal statutes only grant this Court limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  He who asserts this Court has jurisdiction must overcome a presumption that it does not.  *Id.*  A party challenging jurisdiction has two angles of attack.  "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).  "A factual attack, by contrast, 'contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings.'"  *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) (quoting *Leite*, 749 F.3d at 1121).

Here, Defendants bring facial and factual attacks on Plaintiff's standing.  (Doc. 12 at 3; Crescent, Doc. 47 at 7; Xenia, Doc. 8 at 5).  Standing is an "essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992).  It is well established that "the irreducible constitutional minimum of standing contains three elements."  *Id.*  The plaintiff must show he suffered (1) a concrete and particularized injury in fact, that is (2) caused by or fairly traceable to the defendant's conduct, and (3) that a favorable decision will redress the injury.  *Id.*

Because the only form of relief available under the ADA is an injunction, a plaintiff

bringing an ADA claim must show a real and immediate threat of future injury to establish redressability. *Chapman v. Pier 1 (U.S.) Imports Inc.*, 631 F.3d 939, 944 (9th Cir. 2011); *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004) (citing *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). A plaintiff may do this either by demonstrating "deterrence, or by demonstrating injury-in-fact coupled with an intent to return to the noncompliant facility." *Id.* at 944.

The Ninth Circuit recognized the deterrent effect doctrine in *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1137–38 (9th Cir. 2002). Under this doctrine, "once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury." *Id.* at 1136–37. In *Pickern*, a disabled individual had encountered accessibility barriers at a market, which deterred him from shopping there even though, as he stated, "he would shop at the Paradise market if it were accessible." *Id.* at 1138. For the Ninth Circuit, the plaintiff's demonstrated deterrence was "sufficient to establish actual or imminent injury for purposes of standing." *Id.* However, simply pleading a "vague desire to return is insufficient to satisfy the requirement of imminent injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). "Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the 'some day' will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Id.* (quoting *Lujan*, 504 U.S. at 564).

The other way an ADA plaintiff demonstrates standing is by showing he has suffered an injury in fact, and he that he will suffer a similar injury again. *Chapman*, 631 F.3d at 948 (quoting *L.A. v. Lyons*, 461 U.S. 95, 111 (1983)). The injury the ADA is designed to prevent is discrimination, and a plaintiff demonstrates this by showing that a barrier relating to his disability prevents his full and equal enjoyment of the premises. *Id.* at 947. Once this is established, the plaintiff "must establish a 'real and immediate threat of repeated injury.'" *Id.* at 948 (quoting *Lyons*, 461 U.S. at 111).

/ / /

- 7 -

*b. Discussion of ADA Claims*

Mr. Strojnik's Complaints demonstrate neither deterrence nor injury-in-fact.  To begin, there is reason to doubt the sincerity of any alleged deterrence.  For example, while Mr. Strojnik alleges he was deterred from returning to a DoubleTree by Hilton Hotel because of its ADA violations (Doc. 1-3 at 44), that deterrence must have been short-lived.  On November 8, three months after filing his Complaint, Mr. Strojnik filed a Notice in which he claims to have attempted to reserve a room at the same hotel.  (Doc. 24).  It would be absurd, in that instance, for this Court to find that Mr. Strojnik is deterred from returning to that particular hotel.  Obviously, he is not.

As to his allegations of deterrence generally, beyond vague "some day" intentions, none of them contain any indication that he would return to the hotels if they were accessible, which is necessary for his claims.  *See Lujan*, 504 U.S. at 564; *Pickern*, 293 F.3d at 1138.  Nowhere does he explain why as a Phoenix resident (Crescent, Doc. 1-3 at 2) he has such an interest or need in staying in Phoenix area hotels.[4]  To the contrary, Mr. Strojnik has promised to avoid the hotels—provided Defendants pay him.  (*Id.*, Doc. 51-7 at 7); *cf. Strojnik v. Pasadena Robles Acquisition, LLC*, 801 F. App'x 569, 570 (9th Cir. 2020) (upholding the district court's finding that "Strojnik failed to demonstrate an intent to return to defendant's hotel or that he was deterred from visiting defendant's hotel").

The deeper issue with Mr. Strojnik's Complaints is whether he demonstrates an injury-in-fact.  He does not.  Instead of explaining how the alleged ADA violations prevent him from full and equal access to the hotels, Mr. Strojnik makes vague statements about his disabilities, and it is anybody's guess how the particular hotel features he photographs so meticulously actually impact him.  Many courts, reading Mr. Strojnik's many complaints, have seen the same boiler-plate allegations and note Mr. Strojnik's "longstanding practice of failing to allege basic facts about standing, such as a connection between a barrier and [his] disability." *Strojnik v. IA Lodging Napa First LLC,* 2020 WL

---

[4] Two of the hotels Mr. Strojnik visited are only 13 and 16 miles from his residence. (Doc. 12 at 2 n.1).

2838814, at *11 (N.D. Cal. June 1, 2020) (granting a motion to declare Mr. Strojnik a vexatious litigant, in part, because of his continued failure to allege Article III standing); *see also Strojnik v. Kapalua Land Co., Ltd.*, 801 F. App'x 531, 531 (9th Cir. 2020) ("The district court properly dismissed Strojnik's ADA claim against defendants Rand and Marr Jones Wang, LLP because Strojnik failed to allege facts sufficient to demonstrate an injury as a result of the alleged threat."); *Strojnik v. Orangewood LLC*, 829 F. App'x 783, 783 (9th Cir. 2020) ("The district court properly dismissed Strojnik's ADA claim for lack of Article III standing because Strojnik failed to allege that the ADA barriers he identified affected him because of his disabilities."); *Strojnik v. BW RRI II, LLC*, 2020 WL 5210897, at *1 (N.D. Cal. Sept. 1, 2020) ("Because Strojnik hasn't explained how he was harmed by the hotel's accessibility barriers, he hasn't sufficiently alleged an injury-in-fact."); *Strojnik v. Four Sisters Inns, Inc.*, 2019 WL 6700939, at *3 (C.D. Cal. Dec. 9, 2019) (holding Strojnik's photographs and captions to be bare legal conclusions insufficient to show how there are purported barriers his to accessibility); *Strojnik v. Hotel Circle GL Holdings*, LLC, 2019 WL 6212084, at *3 (E.D. Cal. Nov. 21, 2019) (same); *Strojnik v. 1315 Orange LLC*, 2019 WL 5535766, at *2 (S.D. Cal. Oct. 25, 2019) (same); *Strojnik v. Bakersfield Convention Hotel I, LLC*, 436 F. Supp. 3d 1332, 1340 (E.D. Cal. 2020) (same). Here, Mr. Strojnik's Complaints are similarly deficient and do not show an injury-in-fact. He has not demonstrated standing to bring his ADA claims, which, therefore, must be dismissed.

### c. Fraud and Negligence Claims

Each Complaint's remaining claims are different species of fraud and negligence, and they almost all rely on Defendants' alleged ADA violations. (*See* Doc. 1-3 at 46–50; Crescent, Doc. 1-3 at 3–5; Xenia, Doc. 1-3 at 41–44, 46–47). For one fraud claim, Mr. Strojnik filed a Motion to Remand to State Court arguing the claim is completely unrelated to his ADA claims. (Doc. 21 at 1). While his Complaint labels the claim at issue as "Fraud -Common Law and Consumer," (Doc. 1-3 at 49), Mr. Strojnik argues it is actually a "novel" "Brand Deceit" claim that does not share a common nucleus of operative facts with the ADA claims. (Doc. 21 at 5–6).

If a claim falling under a federal court's original jurisdiction shares a "common nucleus of operative fact" with other state law claims, the court may exercise supplemental jurisdiction over those other claims. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *see* 28 U.S.C. § 1367. Here, the Court may exercise supplemental jurisdiction over state fraud and negligence claims that relate to Defendants' alleged federal ADA violations. Importantly, supplemental jurisdiction is a "doctrine of discretion, not of a plaintiff's right." *Gibbs*, 383 U.S. at 726. Courts may decline to exercise supplemental jurisdiction for reasons outlined in statue, such as when a novel state claim presents. *See* 28 U.S.C. § 1367(c)(1). When deciding whether to decline supplemental jurisdiction, a court should take into consideration "judicial economy, convenience and fairness to litigants." *Gibbs*, 383 U.S. at 726.

Mr. Strojnik never explains how his "brand deceit" claim arises from a separate nucleus of operative facts. As alleged in the Complaint, the claim arises from his investigations as an ADA Tester of Defendants' hotels, which are the same investigations that gave rise to his ADA and ADA-related claims. Therefore, the Court rejects Mr. Strojnik's contention that the brand deceit claim is not related. It clearly is. Furthermore, the Court will continue to exercise its supplemental jurisdiction over the brand deceit claim and the rest of Mr. Strojnik's state-law claims because they are easily dismissed. Mr. Strojnik's Motion to Remand for this purpose is denied.

According to Mr. Strojnik, the elements of his novel brand deceit claim are that (1) a defendant misrepresented a fact in violation of the Arizona Consumer Fraud Act and (2) that the misrepresentation proximately caused a plaintiff to suffer damages. (Doc. 21 at 5) (citing *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 825 (D. Ariz. 2016)). However, the Complaint fails to show what damages Mr. Strojnik suffered as a proximate result of any alleged misrepresentation. Therefore, he fails to demonstrate an injury that is fairly traceable to Defendants' allegedly wrongful behavior. *See Lujan*, 504 U.S. at 559. The brand deceit claim will be dismissed.

For the remaining claims, Mr. Strojnik asserts Defendants fraudulently or

negligently misrepresented they were ADA compliant, they failed to disclose they were not ADA complaint, or they negligently harmed him through their actions or omissions related to ADA compliance.[5]  But without a viable ADA claim, without any showing of concrete injury resulting from ADA non-compliance, all of these associated claims must necessarily fail because Mr. Strojnik fails to demonstrate a concrete injury resulting from ADA non-compliance.  *See Lujan*, 504 U.S. at 559.  Therefore, each Complaint in its entirety will be dismissed with prejudice.

### d.  Leave to Amend

In his Responses to Defendants' Motions to Dismiss, Mr. Strojnik requests leave to amend his Complaints.  (Doc. 16 at 12; Xenia, Doc. 15 at 20).  Normally, courts "freely" give leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a).  But courts may deny such leave when faced with "bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Here, there are many reasons to deny leave to amend.  Given the chronic deficiencies in Mr. Strojnik's many complaints over the years and recent months, and the many opportunities he has had to rectify such deficiencies, the Court finds that Mr. Strojnik makes his request for leave to amend in bad faith.  Justice does not require leave to amend.  His request is denied.

## IV.  Vexatious Litigant Motions

With the claims dismissed, the Court will now consider the Vexatious Litigant Motions.  To declare a party a vexatious litigant, a court must (a) provide the accused party with notice and an opportunity to be heard, (b) create an adequate record on which to decide the motion, (c) make substantive findings as to the frivolous or harassing nature of the

---

[5] *See e.g.,* (Doc. 1-3) (containing counts for ADA violations, negligence, negligent misrepresentation, failure to disclose, fraud and consumer fraud); (Crescent, Doc. 1-3) (containing counts for ADA violations and negligence); (Xenia, Doc. 1-3) (containing counts for common law fraud, consumer fraud, failure to disclose, fraudulent concealment, federal securities fraud, state securities fraud, ADA violations and negligence).

1    litigant's actions, and finally (d) craft a narrowly-tailored order preventing the litigant's

2    abusive behavior. *Evergreen*, 500 F.3d at 1057–58.

3        Mr. Strojnik argues that this Court has no power to issue a vexatious litigant order

4    because he originally filed these cases in state court. (Doc. 18 at 7; Crescent, Doc. 52 at 2–

5    3; Xenia, Doc. 24 at 5). He cites no supporting authority for this argument. To the contrary,

6    the case law makes no distinction. *See De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th

7    Cir. 1990) ("There is strong precedent establishing the inherent power of federal courts to

8    regulate the activities of abusive litigants by imposing carefully tailored restrictions under

9    the appropriate circumstances.") (quoting *Tripati v. Beaman*, 878 F.2d 351, 352 (10th Cir.

10   1989)). This Court's inherent power to curb abuse is not bound simply because an abusive

11   litigant brought a federal claim in state court first. If it were otherwise, the power would

12   be worthless; all vexatious litigants would just file their federal claims in state court.

13       In addition, Mr. Strojnik is the master of all his claims, and if he wanted to avoid

14   federal jurisdiction then he could have crafted a complaint that exclusively relies on state

15   law. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Great N. Ry. Co. v.

16   Alexander*, 246 U.S. 276, 282 (1918). But he has not. Mr. Strojnik has brought a federal

17   claim that was properly removed to this Court. Defendants then moved to declare him a

18   vexatious litigant. Those Motions are properly before the Court.

19       *a.  Notice and Opportunity to be Heard*

20       This first step requires that the accused party have "an opportunity to oppose the

21   entry of the order." *Id.* This does not require a hearing. *See Evergreen*, 500 F.3d at 1058–

22   59 (citing *Pac. Harbor Cap., Inc v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir.

23   2000) (finding that an opportunity to be heard only requires the opportunity to brief the

24   issue fully)); *IA Lodging*, 2020 WL 2838814, at *7 (same). Here, Mr. Strojnik has filed

25   Responses to each of the Vexatious Litigant Motions, thus satisfying due process

26   requirements. (Doc. 18; Crescent, Doc. 52; Xenia, Doc. 24). His requests for an

27   evidentiary hearing made in those Responses is denied because the issue is fully briefed,

28   he has had his opportunity to be heard, and the Court needs no further presentation to make

1    its ruling.  *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings);
2    LRCiv 7.2(f) (same).

3          b.  *An Adequate Record*

4          "An adequate record for review should include a listing of all the cases and motions
5    that led the district court to conclude that a vexatious litigant order was needed."  *De Long*,
6    912 F.2d at 1147.  At a minimum, the record must show the "litigant's activities were
7    numerous or abusive." *Id.*

8          The Court will take judicial notice of the fact that Mr. Strojnik has filed thousands
9    ADA lawsuits across the western United States.  *See* Fed. R. Evid. 201(b) (allowing courts
10   to take judicial notice of "generally known" facts or accurate and readily accessible facts
11   from sources "whose accuracy cannot reasonably be questioned"); *Bias v. Moynihan*, 508
12   F.3d 1212, 1225 (9th Cir. 2007) (noting that courts may take notice of "proceedings in
13   other courts, both within and without the federal judicial system, if those proceedings have
14   a direct relation to matters at issue") (internal citations and quotation marks omitted).

15         There is no doubt that Mr. Strojnik's history and his *modus operandi* are well
16   known.  *See MidFirst*, 279 F.Supp.3d at 893 (describing attorney-Mr. Strojnik's ADA
17   litigation tactics as "extortionate" and "pervasive," which included pursuing "upwards of
18   160 cookie-cutter lawsuits in federal court and, from early to later 2016, more than 1,700
19   such suits in Arizona state court"); *Strojnik v. Bakersfield Convention Hotel I, LLC*, 436 F.
20   Supp. 3d 1332, 1336 (E.D. Cal. 2020) ("Plaintiff Peter Strojnik . . . has filed thousands of
21   disability discrimination cases against hotel defendants in state and federal courts, and this
22   is one of those cases."); *Strojnik v. 1530 Main LP*, 2020 WL 981031, at *1 (N.D. Tex. Feb.
23   28, 2020) (noting that Mr. Strojnik, a *pro se* plaintiff, was disbarred partly for filing
24   "thousands" of ADA lawsuits); *Strojnik v. Host Hotels & Resorts, Inc.*, 2020 WL 2736975,
25   at *1 (D. Haw. May 26, 2020) (same).

26         The Court also takes judicial notice of the fact that Mr. Strojnik consented to
27   disbarment after the Arizona State Bar had initiated disciplinary proceedings against him
28   related to his ADA practice. (Doc. 17-1 at 106–108). Although the Court notes Mr. Strojnik

1   states he "declines to be associated with the State Bar of Arizona" as such association was

2   "inconsistent with his 'core principles of morality and fair play.'" (Doc. 18 at 2 n.1).

3        Even without a license to practice law, Mr. Strojnik continues to file ADA lawsuits

4   across the country.  For example, in June 2020, the Northern District of California found

5   that Mr. Strojnik had filed 114 *pro se* ADA cases in California district courts, half of which

6   eventually settled, and none of which have been tried on the merits.  *IA Lodging*, 2020 WL

7   2838814, at *7.  Those findings, which the Court will take judicial notice of, were based

8   on information provided by Mr. Strojnik.  *Id.*; *see Bias*, 508 F.3d at 1225 (noting a court

9   may take notice of proceedings in other courts with direct relation to the matters at issue);

10  *Lee v. L.A.*, 250 F.3d 668, 689–90 (9th Cir. 2001) (noting a court may take judicial notice

11  of undisputed matters of public record).  In addition to a list of his cases filed in California,

12  Mr. Strojnik told the Northern District of California Court that he had recovered a total of

13  $249,079 in settlement fees from those cases.  (Doc. 28-1 at 12).  That recovery, he claimed,

14  was ultimately reduced by his claimed expense of $55,960 in filing and service fees, as

15  well as $58,000 in "investigative fees." (*Id.*)

16       This Court also requested information from Mr. Strojnik on his ADA filings in

17  Arizona.  (Doc. 30).  As of December 19, 2020, Mr. Strojnik claims to have filed 64 cases

18  with ADA claims in Arizona superior courts.  (Doc. 31 at 2).  Of those, he has voluntarily

19  dismissed fourteen and settled thirteen.  (*Id.*)  None have yet been tried on their merits.

20  (*Id.*)

21       The Court also requested that Mr. Strojnik disclose "the total amount of money

22  Plaintiff has recovered in settlements from his *pro se* ADA cases filed in Arizona." (Doc.

23  30).  He claims to have been awarded $5,040.48 in settlements from his "ADA claims."

24  (Doc. 31 at 2).  He also claims to have spent $11,419.50 in fees and service costs, and

25  $14,750 in other "initial expenses."  (*Id.*)  What these expenses are exactly, Mr. Strojnik

26  does not say.  In any event, Mr. Strojnik represents to the Court that his *pro se* lawsuits are

27  a money-losing endeavor.  However, Defendant New Crescent contests whether these

28  numbers actually respond to the Court's request for the total amount in settlements from

Mr. Strojnik's "ADA cases." (Doc. 33). In support, New Crescent filed an October 2020 settlement agreement in which Mr. Strojnik received $7,500 to dismiss an Arizona ADA lawsuit with prejudice. (Doc. 33-1). Mr. Strojnik did not explain or deny this point in his Reply brief. (Doc. 35). Accordingly, the Court finds that Mr. Strojnik's claim that he suffers a "financial loss" by pursuing his "ADA claims" versus "ADA cases" misrepresents the accurate amount he is recovering. Taking this into account, the Court finds that $7,500 represents a reasonable estimate of the average settlement for one of Mr. Strojnik's ADA cases. To date, he says he has settled thirteen cases, which would amount to just over $100,000. Even if the Court accepted Mr. Strojnik's claimed "initial expenses" beyond fees and service costs as legitimate, he would still be making about $75,000.

Finally, the Court takes judicial notice of the PACER search results listing Mr. Strojnik's *pro se* ADA cases before the Arizona District Court. (Doc. 17-1); *see Lee*, 250 F.3d at 689–90; *Strojnik v. SCG Am. Constr. Inc.*, 2020 WL 4258814, at *3 (C.D. Cal. Apr. 19, 2020) (taking judicial notice of Mr. Strojnik's PACER search results). By the Court's count, as of December 2020, twenty-two of Mr. Strojnik's *pro se* ADA cases have been heard in this District since his disbarment after they were removed from state court.

### c. Substantive Findings

Next the Court will make its "substantive findings as to the frivolous or harassing nature of the litigant's actions." *De Long*, 912 F.2d at 1148 (quoting *In re Powell*, 851 F.2d 427, 431 (D.C. Cir. 1988)). Simply filing many claims, as Mr. Strojnik does, is not reason enough to find a litigant is vexatious. *See Evergreen*, 500 F.3d at 1059. As noted above, the primary way to create a legal market for ADA claims is to allow serial litigants. But when a serial litigant continues to make exaggerated claims of injury with an intent to coerce settlement, that litigant becomes vexatious. *Evergreen* 500 F.3d at 1062.

Like a plaintiff that brings numerous claims, there is nothing inherently vexatious about settling a claim. Normally, courts encourage settlement to promote efficiency. *See Franklin*, 884 F.2d at 1225. And in some cases, it may be more efficient for ADA plaintiffs to forego injunctive relief and, instead, accept a monetary settlement that compensates their

genuine ADA injures. *See* R.H. Coase, *The Problem of Social Cost*, 3 J.L. & Econ. 1, 2 (1960) ("The problem is to avoid the more serious harm."). However, a plaintiff's attempt to settle may become coercive and extortionate when he pursues a settlement amount well in excess of the actual personal cost of his forgoing injunctive relief. *See* Sidney W. DeLong, *Coasean Blackmail: Protection Markets and Protection Rackets*, 67 U. Kan. L. Rev. 281, 283 (2018). In this latter instance, a plaintiff uses the ADA not to vindicate the rights of disabled Americans, but rather, to unjustly enrich himself.

In *Molski v. Evergreen*, the Ninth Circuit evaluated two of the district court's substantive findings in a vexatious litigant order. 500 F.3d at 1059–60. First, the district found that the plaintiff plainly exaggerated claims that he repeatedly injured himself at public accommodations in the same manner. *Id.* at 1059. The Ninth Circuit held this finding was not in error. *Id.* ("Common sense dictates that Molski would have figured out some way to avoid repetitive injury-causing activity; even a young child who touches a hot stove quickly learns to avoid pain by not repeating the conduct."). Second, the Ninth Circuit held that the district court did not err when it inferred an "intent to harass defendants into settlement from the fact that Molski had tried on the merits only one of his roughly 400 ADA cases and the fact that Molski . . . targeted ethnic restaurants viewed as easy prey for coercive claims." *Id.* at 1059–60.

There is no serious doubt that Mr. Strojnik exaggerates his injuries. As noted above, this Court and many others have critiqued Mr. Strojnik's "longstanding" failure to show a "connection between a barrier and [his] disability." *IA Lodging*, 2020 WL 2838814, at *11. This is not news to Mr. Strojnik. And yet despite these admonishments, he continues to file defective complaints. Faced with a blatant unwillingness to explain how alleged non-conformities cause him injury, the Court can only conclude, and so finds, that Mr. Strojnik habitually over-exaggerates his injuries.[6]

---

[6] In a deposition with Defendant New Crescent, Mr. Strojnik admitted that he did not visit that Defendant's hotel in a wheelchair, nor does he remember if he used a cane or crutch. (Crescent, Doc. 48-1 at 39). He also admitted that he does not own a wheelchair-accessible van. (*Id.* at 40). Despite not owning a van, he has brought claims against other Defendants

1         Additionally, Mr. Strojnik has no financial incentive to bring a genuine complaint

2  or to try his cases on their merits.  Consider the settlement details provided by Mr. Strojnik

3  on his ADA cases in California and Arizona in which he asks for thousands of dollars to

4  dismiss the claim with prejudice and additional money to promise not to visit other hotels.

5  (Doc. 28-1 at 12; 31 at 2).  Even if the Court believed the financial information Mr. Strojnik

6  provided in this case, there is enough information to make the inference that Mr. Strojnik

7  has been making a large profit from the hundreds of ADA cases filed across the country,

8  cases that that have never been tested on their merits.  In addition, his settlement offers

9  usually request thousands of dollars in damages in exchange for a stipulated dismissal with

10  prejudice that only relates to the property in question—a promise to not visit Defendants'

11  other hotels costs extra.  (Doc. 17-1 at 123; Crescent, Doc. 51-7 at 7).  Putting aside the

12  fact that the ADA does not allow for damages, the fact that he is requesting additional

13  payment to abstain from visiting hotels is plainly a request that unjustly enriches him.  It

14  further undermines his professed purpose for advancing his ADA claims.  He has not

15  incurred any damages or costs related to these other hotels, and so payment to not visit

16  them is effectively a payment to prevent Mr. Strojnik from self-inflicting further legal

17  injury.  These efforts to "coerce settlement" are plainly "at odds with our system of justice."

18  *Evergreen*, 500 F.3d at 1062.  While the agreements require the other party's "[b]est efforts

19  to remediate readily achievable [ADA] remediations," (Doc. 17-1 at 123), those efforts

20  would not cover the hotels Mr. Strojnik promises to avoid. And in some settlements, this

21  "best effort" is not required at all.  (*See e.g.,* Doc. 33-1).  Such limp efforts to bring about

22  the ADA's policy goals make Mr. Strojnik a lousy private attorney general.  *See Newman*,

23  390 U.S. at 402.  The Court finds that Mr. Strojnik harasses and coerces parties into

24  agreeing to extortive settlements.

25         In total, the Court finds Mr. Strojnik's litigation tactics frivolous and harassing.  The

26  Vexatious Litigant Motions are granted, and the Court will enter an order to enjoin further

27  abuse.

28

for failing to post "van accessible" markings on their property. (Doc. 1-3 at 31).

d. *Narrowly Tailored Order Preventing Abuse*

This Order must be "narrowly tailored to the vexatious litigant's wrongful behavior." *Evergreen*, 500 F.3d at 1061. It must add "a valuable layer of protection . . . for the courts and those targeted" by Mr. Strojnik's claims. *Id.* At the same time, it must not deny Mr. Strojnik "access to courts on any ADA claim that is not frivolous." *Id.*

Federal courts have an "inherent power . . . to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances." *De Long*, 912 F.2d at 1147 (quoting *Tripati*, 878 F.2d at 352). In addition, 28 U.S.C. § 1651(a) grants federal courts the power to enjoin vexatious litigants from continuing their abuse. *Id.* Traditionally, this has been used to screen a plaintiff's filings in the district court. *See e.g., Evergreen*, 500 F.3d at 1064. However, "[a]s new ideas develop and old devices prove ineffective, the judiciary must respond with imaginative new techniques designed to protect the court access of all litigants." *Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir. 1986) (surveying the variety of injunctive devices employed by federal courts to curtail frivolous and vexatious litigation).

The wrongful behavior here is Mr. Strojnik's harassing attempts to unjustly enrich himself through frivolous ADA claims. This behavior, to say the least, wastes "judicial time that properly could be used to consider the meritorious claims of other litigants." *De Long*, 912 F.2d at 1149. Already confronted with Mr. Strojnik's behavior, two federal courts in California have enjoined Mr. Strojnik from filing ADA claims in their respective districts without first obtaining leave of court. *See SCG Am. Constr. Inc.*, 2020 WL 4258814, at *8; *IA Lodging*, 2020 WL 2838814, at *13. This Court will follow suit and adopt a similar order. But while such an order on its own would provide some protection, it would not sufficiently address the scope of the nuisance. The Court must therefore add two additional protections.

First, an additional screening of removed cases is necessary. All of Mr. Strojnik's current cases in this District were originally filed in state court, and a simple pre-filing injunction would fail to prevent frivolous claims that are appropriately removed to this

Court under federal question jurisdiction. Mr. Strojnik should know that if he elects to bring a federal cause of action in state court, that cause of action may be removed to federal court. Therefore, the Court will automatically review Mr. Strojnik's complaints to determine whether it is frivolous or asserted for an improper purpose in any ADA action brought by Mr. Strojnik in state court and subsequently removed to the Arizona District Court. Again, Mr. Strojnik is the master of all his claims, and he may decide to avoid federal jurisdiction by crafting a complaint that exclusively relies on state law. *See Caterpillar Inc.*, 482 U.S. at 392; *Great N. Ry. Co.*, 246 U.S. at 282.

Second, if this Order is to be truly "narrowly-tailored," it must precisely address the root of the wrongful behavior: Mr. Strojnik's financial incentives. It is reasonable to assume that many of the parties targeted by Mr. Strojnik's vexatious tactics would rather pay Mr. Strojnik to go away than deal with a lawsuit. The parties that choose to bear the costs of defeating Mr. Strojnik's frivolous claims in court are too few and far between. And because it is relatively inexpensive for Mr. Strojnik to file a claim, these brave parties' efforts ultimately do not deter further frivolous claims. Therefore, the Court must increase Mr. Strojnik's cost of filing frivolous ADA cases by requiring that he post a bond for ADA cases that come before this Court. *See e.g.,* (Doc. 32-1) (containing an order from California Superior Court, *Strojnik v. Sahi Group, LLC,* No. 20CV367614 (Cal. Super. Ct. Dec. 16, 2020) imposing a bond requirement on Mr. Strojnik upon filing of new complaints). Such requirements have been issued before to protect federal courts from "misuse of legal processes." *Sassower v. Am. Bar Ass'n*, 33 F.3d 733, 736 (7th Cir. 1994) (requiring a party know for filing frivolous claims to post a bond before continuing with further claims). In addition, the Court finds, under the All Writs Act, this requirement is "necessary" and "appropriate" to protect this District from frivolous claims over which it has no jurisdiction. 28 U.S.C. § 1651(a).

Accordingly,

**IT IS HEREBY ORDERED** dismissing Plaintiff's claims with prejudice for lacking standing.

**IT IS FURTHER ORDERED** that Plaintiff's requests for leave to amend his Complaints (Doc. 16; Xenia, Doc. 15) are **denied**.

**IT IS FURTHER ORDERED** that Defendants' Motions to Declare Plaintiff a Vexatious Litigant are **granted**. Plaintiff Peter Strojnik is hereby declared a vexatious litigant.

**IT IS FURTHER ORDERED** that if Mr. Strojnik attempts to file any new action alleging violations of the Americans with Disabilities Act in the United States District Court for the District of Arizona after the date of this Order, he must include therewith a "Motion for Leave to File" and a copy of this Order. If Mr. Strojnik does not include a "Motion for Leave to File" and a copy of this Order with any new action he submits, the Court will not consider the filing, and the action will be summarily dismissed for failure to comply with this Order. If the Court cannot determine from the "Motion for Leave to File" that Mr. Strojnik's claims demonstrate standing or meet federal pleading requirements, the Court will read no further, the "Motion for Leave to File" will be denied, and the case will be dismissed for failure to comply with this Order.

**IT IS FURTHER ORDERED** that if a case filed by Mr. Strojnik in state court and containing claims alleging violations of the Americans with Disabilities Act is removed to the United States District Court for the District of Arizona after the date of this Order, the Court will automatically screen the complaint to determine whether it demonstrates standing and meets federal pleading requirements. The Court will apply this same screening to any and all amended complaints that Mr. Strojnik files alleging violations of the Americans with Disabilities Act. If the Court determines that Mr. Strojnik fails to demonstrate standing or otherwise meet federal pleading requirements, it shall dismiss the case.

**IT IS FURTHER ORDERED** that within 21 days after filing a new action in the United States District Court for the District of Arizona alleging violations of the Americans with Disabilities Act, within 21 days after an action is removed from state court to United States District Court for the District of Arizona alleging violations of the Americans with

Disabilities Act, or within 21 days after Mr. Strojnik amends a complaint before the United States District Court for the District of Arizona to include alleged violations of the Americans with Disabilities Act, Mr. Strojnik shall post a bond for $10,000. If after 21 days, Mr. Strojnik fails to post the bond, the Court will dismiss the case for failure to comply with this Order.

**IT IS FURTHER ORDERED** that if at any point the Court determines that Mr. Strojnik fails to demonstrate standing or otherwise meet federal pleading requirements, the Court will dismiss the case and initiate sanctions proceedings by ordering Mr. Strojnik to show cause why sanctions should not be imposed under Federal Rule of Civil Procedure 11(b)(1). If, after providing Mr. Strojnik an opportunity to be heard, the Court imposes sanctions, the bond shall be used towards paying the opposing party's reasonable attorney's fees. Any remaining amount will be returned to Mr. Strojnik. If the Court finds Mr. Strojnik demonstrates standing and meets federal pleading requirements, or if the Court declines to impose sanctions, Mr. Strojnik may recover the bond.

**IT IS FURTHER ORDERED** that all remaining motions are **denied** as moot.

**IT IS FURTHER ORDERED** that the Clerk provide a copy of this Order to the judges of the United States District Court for the District of Arizona.

**IT IS FINALLY ORDERED** directing the Clerk of Court to enter judgment accordingly, close these consolidated cases (No. CV-20-01532; No. CV-20-00343; No. CV-20-01434), and termination this action.

Dated this 6th day of January, 2021.

Honorable Diane J. Humetewa
United States District Judge