Peter Strojnik,
7847 N. Central Avenue
Phoenix, Arizona 85020
Telephone: (602) 524-6602
ps@strojnik.com

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Peter Strojnik,<br><br>                    Plaintiff,<br>vs.<br><br>Kingman Investments, LP dba Best Western Plus a Wayfarer's Inn & Suites; Best Western International, Inc.<br><br>                    Defendants. | Case No: 3:20-cv-08333-ESW<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS BEST WESTERN FOR FAILURE TO STATE A CLAIM [19]** |

## INTRODUCTION

This case was initially brought in the Mohave Superior Court. Superior Court is the preferred forum primarily because the filing fee is less. Secondarily, the Superior Court has already ruled that (1) Plintiff has standing to assert ADA claims, (2) Plaintiff's complaints are not subject to dismissal, and (3) Plaintiff is not a vexatious litigant. Exhibits 1-4. This avoids the new ADA defense strategy of removing cases to the district court, moving to dismiss under 12(b)(1) or 12(b)(6), and moving to have Plaintiff declared vexatious litigant, all with a hope of different result. Indeed, Defendant's exhibit [19-1] demonstrates the success of this strategy[1].

---

[1] The ruling by the Honorable Diana Humetewa is an outlier. Judge Logan remanded 3 legally indistinct cases for lack of standing without making any judgment on the merits. Exhibits 5, 6 and 7. Judge Logan recognized that dismissal for lack of standing is always without prejudice because *with prejudice* resolves the merits of the case, something that the district court cannot do unless it has jurisdiction.  See, e.g., *McIntyre v. Fallahay,* 766 F.2d 1078, 1082 (7th Cir. 1985) ("If the case did not belong in federal court at all, it should be remanded rather than dismissed" under § 1447(c)); *Maine Ass'n of Interdependent Neighborhoods v. Comm'r, Maine Dep't of Human Res.,* 876 F.2d 1051, 1053-54 (1st Cir. 1989) (concluding § 1447(c) requires district court to remand, not dismiss, for lack of standing). "A suit dismissed for lack of jurisdiction cannot *also* be dismissed `with

Defendant timely removed the case to the district court [1]. Best Western now seeks to dismiss counts (7) Civil Conspiracy and (8) Civil Aiding and Abetting.

**MEMORANDUM**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," *id.*, at 570. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556. Two working principles underlie *Twombly.* First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. *Id.,* at 555. Second, determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. *Id.,* at 556.

**1. Civil Conspiracy under Arizona law.**

In Arizona, a civil conspiracy occurs when "two or more people agree to accomplish an unlawful purpose, or to accomplish a lawful object by unlawful means, causing damages." *Wells Fargo Bank v. Ariz. Laborers et al.*, 201 Ariz. 474, 498, 38 P.3d 12, 36 (2002) (en banc). However, "there is no such thing as a civil action for conspiracy; the action is one for damages arising out of acts committed pursuant to the conspiracy, and damage for which recovery may be had in such civil action is not the conspiracy itself but the injury to plaintiff produced by specific overt acts." *Perry v. Apache Junction Elementary,* 20 Ariz. App. 561, 564, 514 P.2d 514, 517 (Ct. App. 1973) (citing *Tovrea Land & Cattle Co. v. Linsenmeyer,* 100 Ariz. 107, 412 P.2d 47 (1966)); Restatement (Second) of Torts § 876(a) (1979) ("For harm resulting to a third person from the tortious

---

prejudice'; that's a disposition on the merits, which only a court with jurisdiction may render." *Frederiksen v. City of Lockport,* 384 F.3d 437, 438 (7th Cir. 2004); *see Morrison v. YTB Int'l, Inc.,* 649 F.3d 533, 535 (7th Cir. 2011) (stating that jurisdictional dismissal under Rule 12(b)(1) is without prejudice).

2

conduct of another, one is subject to liability if he . . . does a tortious act in concert with the other or pursuant to a common design with him[.]").

**2. Plaintiff's fact allegations of primary torts: Violation of Arizona's Consumer Fraud Act ("ACFA")– brand deceit – and misrepresentation.**

a. <u>Plaintiff's general outline of the brand deceit is described in ¶¶ 4 and 83:</u>

> 4. Hotels, motels and other places of lodging have developed a system of deceptive self-identification through the use of purchased brand names such as "Holiday Inn" and "DoubleTree by Hilton" while at the same time concealing the true identity of the hotel owners and operators. The intent and purpose of this deceptive identification is to mislead the lodging public into believing that they are booking a hotel room at a national brand name property when they are in fact booking a room with an unknown owner and an unknown operator.
>
> ***
>
> 83. Hotels, motels and other places of lodging have developed a system of deceptive self-identification through the purchase and use of nationally recognizable brand names such as "Holiday Inn", "Hilton", "Motel 6", "Marriott" in order to hide the true ownership and operational management of the hotel or motel.

b. <u>Allegations of KILP's primary tort 1 – misrepresentation related counts 3-5:</u>

Misrepresentation related counts 3 (negligent misrepresentation), 4 (failure to disclose) and 5 (common law and ACFA) arise out of the misrepresentations and failures to disclose information on KILP's / Best Western's informational and booking website. *See* Complaint at ¶¶30 (failure to disclose accessible features) and 31 (a)-(c) (listing KILP's and Best Western' misrepresentations on the informational and booking website).

c. <u>Allegations of KILP's primary tort 2 – brand deceit, Count 6:</u>

> 84. One way this deceptive self-identification is communicated to the guests and potential guests is through actual identification on the property itself. For example, Defendant KILP identifies itself as Best Western Plus at the entrance to the Hotel:



85. KILP is not Best Western Plus. It is KILP. The misidentification is necessary because general public, including Plaintiff, identify Best Western properties with a higher degree of lodging standard and general integrity than KILP.

86. Another way Defendant misidentifies itself is thorough its booking website:



87. Yet other ways the Hotel misidentifies itself as through business card of the Hotel management:



4

88. The intent and purpose of this deceptive self-identification is to mislead the lodging public into believing that they are booking a hotel room at a national brand name property when they are in fact booking a room with an unknown owner and an unknown operator. Plaintiff justifiably relied on KILP's false self-identification to his damage.

d. KILP's agreement with Best Western to deceive is factually alleged in ¶¶93-107:

Plaintiff alleges that Best Western is the owner of the "Best Western Plus" brand name. ¶93. Best Western and KILP knew that Best Western brand has positive reputation, while KILP has no reputation. ¶94. Public's perception of KILP is wholly derivative of the reputation of Best Western. ¶95. Best Western and KILP also knew that KILP would sell more rooms if it sold the rooms under the name Best Western and not KILP. ¶96. KILP paid Best Western for the use of its brand name Best Western Plus. ¶97. Best Western and KILP structured their relationship so that Plaintiff and the public would believe that Best Western operates the Hotel. ¶98. Best Western provided KILP with a booking platform on Best Western's website and agreed that KILP misrepresent its accessibility features on it. ¶99. Best Western and KILP also knew that the use of Best Western's brand name and the misrepresentations on the Best Western's website would mislead the traveling public into believing that they were dealing with a reputable national lodging chain when in fact they are dealing with an unknown person or entity with no reputation and that the website disclosures were truthful. ¶100. It was for these reasons that Best Western and KILP agreed that the Hotel would market its rooms under the name of Best Western. ¶101. The agreement between Defendants assured that Best Western would receive compensation for its part of the brand deceit while KILP would reap the benefits of greater sales caused by Defendants' brand deceit. ¶102. KILP and Best Western agreed to falsely market the Hotel as a "Best Western Plus" in order to mislead the public, including Plaintiff. ¶103 Plaintiff believed he was dealing with Best Western when in fact he was dealing with an unknown entity. ¶104. Defendants Best Western and KILP agreed to accomplish an unlawful purpose, the sale of rooms under deceptive brand, and did so by unlawful means. ¶105. Defendants Best Western and KILP also agreed to accomplish another unlawful purpose, the sale of rooms to the disabled

travelers with false accessibility information and did so by unlawful means. (¶106). Plaintiff was damaged. ¶107.

The Complaint factually alleges a relationship between KILP and Best Western that was designed to mislead (¶98). It describes in factual detail the intent to mislead (¶100). It describes in factual detail the agreement between Best Western and KILP to market KILP's rooms under the name of Best Western (¶101) which would benefit KILP and Best Western at the expense of Plaintiff (¶102). The Complaint factually confirms that the "unlawful purpose" was to sell the rooms under false pretenses (¶105) and to sell them on the basis of false accessibility information (¶106) The alternative "unlawful means" element is detailed in Counts 3-6 against KILP.

**3. Arizona's civil aiding and abetting.**

To establish a claim of aiding and abetting tortious conduct, proof of three elements is necessary: "(1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach." *Wells Fargo*, 201 Ariz. at 485, 38 P.2d at 23 (citing *Gomez v. Hensley,* 145 Ariz. 176, 178, 700 P.2d 874, 876 (Ct. App. 1984)). "Substantial assistance" by a secondary tortfeasor, as required to establish liability as an aider and abettor, means more than "a little aid." Id. at 488, 38 P.3d at 26. In determining whether the defendant's assistance in aiding and abetting a tort was "substantial," the test is whether the assistance made it "easier" for the violation to occur, not whether the assistance was necessary. Id. at 489, 38 P.3d at 27(quotation omitted).

**4. Plaintiff's factual allegations of aiding and abetting.**

a. Torts by primary tortfeasor:

KILP committed misrepresentation torts, Counts 3 – 5, and brand deceit violation of ACFA.

b. Best Wester Knew that KILP was committing torts:

KILP was committing torts through Best Westerns informational and booking website, ¶¶30-31(a)-(c) and "knew that the use of Best Western's brand name and the misrepresentations on the Best Western's website would mislead the traveling public into

believing that they were dealing with a reputable national lodging chain when in fact they are dealing with an unknown person or entity with no reputation and that the website disclosures are truthful". ¶100. Best Western also provided the means for KILP's commission of misrepresentation and brand deceit by providing signage and a website platform with reservation assistance. *See* Best Western's Rules and Regulations, Exhibit 8, Chapter 300 describing Best Western's assistance with signage, Chapter 400, describing Best Western's assistance with reservation system, Chapter 500, Best Western's assistance with administration.

Best Western knew what KILP was doing every step of the way.

c. Best Western provided substantial assistance:

Plaintiff alleges that Best Western provided substantial assistance by:

a. Providing KILP with the Best Western signage on the physical hotel building; and

b. Maintaining a booking website that does not disclose the true ownership and operator of the Hotel; and

c. Issuing reservation confirmations in the name of Best Western in order to conceal the true ownership and operations; and

d. Otherwise assuring that the true name of the owner of the Hotel appears nowhere on its disclosures, websites, booking websites, telephonic identification, physical signage or anywhere else; and

e. Providing a website platform upon which Defendant KILP advertised its rooms with false and misleading accessibility disclosures.

¶101(a)-(e).

**5. Plaintiff's "belief", a state of mind, can be alleged generally.**

Defendant correctly points out that ACFA damage or injury occurs when the consumer relies on the misrepresentation even though the reliance is not reasonable. Motion [19] at 6:3-4. Inexplicably, however, Defendant then argues, "[i]n the Complaint, Plaintiff falsely claims that he 'believed he was dealing with Best Western when in fact he was dealing with an unknown entity'." Id. at 6:16-18.

7

Plaintiff's belief, or reliance, each a "state of mind" can be alleged generally, Fed. R. Civ. P. 9(b). At this point in the proceeding, contrary to Defendant's urging, this fact allegation must be taken as true. Defendant will have plenty of opportunity to challenge Plaintiff's reliance – even if unreasonable – during discovery and trial.

**6. Plaintiff does not allege ACFA against Best Western.**

Defendant confounds the fraud allegations against KILP with the conspiracy and aiding and abetting against Best Western. Conspiracy is a derivative cause of action arising out of an agreement to commit bad acts by *either* conspirator. In this context, Defendant argues against itself: ACFA damage or injury occurs when the consumer relies on the misrepresentation even though the reliance is not reasonable. Motion [19] at 6:3-4.

**7. "Tiny Font" statement that "each Best Western branded hotel is independently owned and operated" works against Defendant's position.**

The question of tiny font goes to the existence of brand deceit, Count 6, alleged as one of two primary conspiratorial torts. The tiny font issue does not address the second set of primary torts alleged in Count 3-5.

Defendant's position is not persuasive: First, there is no tiny font statement of Plaintiff's version of Best Western informational and booking platform:



Second, the ACFA does not require a consumer to conduct an investigation of a hotel room merchant. Third, one needs a magnifying glass to read the tiny font that exists only on Defendant's version of the website. Fourth, Best Western's Rules and Regulations, Exhibit 8, provides for the proper display of actual ownership:

> 300.19  Each Member shall display in plain view at the front desk an ownership plaque in accordance with the Brand Identity Manual.
...

Plintiff does not have the Brand Identity Manual but can assert that there was no "ownership plaque" in "plain view" at KILP's hotel. Contrary to Defendant's position, the tiny font disclosure is rather yet another piece of evidence supporting KILP's and Best Western's liability.

**8. Defendant's interesting observation.**

On 8:21-25 of [19], Defendant makes an interesting observation:

> Giving credence to Plaintiff's misguided theory of liability against BWI is tantamount to holding that every franchisee/franchisor, licensee/licensor, and brand relationship is replete with fraud, and if Plaintiff's allegations in this regard are considered valid, countless restaurant, hotel and other service establishments' business models would be called into question. Such a contention is patently absurd.

Plaintiff does not claim that *every* relationship between a brand licensor and brand licensee is fraught with fraud. Plaintiff claims that the KILP – Best Western relationship is fraught with fraud. But, of course, there are different types of licensor – licensee relationships that require different analysis.

For example, *every* McDonald's restaurant is strictly controlled by the franchisor. The franchisor requires that *every* franchisee occupy the same building architecture, same order counters, same display, same ordering tablets, same uniforms, same seating arrangement, same color tables and chairs, same restroom layout. A McDonald's franchisee must prepare each meal *exactly* the same, grill a hamburger at *exactly* same temperature for *exactly* the same time, use *exactly* the same fryer to prepare the french-fries in *exactly* the same oil in *exactly* the same frying vessel at *exactly* the same temperature for an *exactly* the same period. So, when a customer goes to a McDonalds anywhere in the United States, he gets the precisely what he expects: The same meal prepared exactly the same way. Every McDonalds is designed to invoke the "I've been here before" response in every guest.

The lodging industry is fundamentally different. One day a hotel is "Doubletree by Hilton", the next day it is a "Best Western". Each hotel franchisee uses different building architecture, different beds, different sheets, different room layouts, different check in counter, different passenger loading zone and, most importantly, different accessibility

9

elements. A hotel franchisee simply uses the brand name as a marketing tool. The licensing relationship in the hospitality business is designed for one purpose and one purpose only: To enrich the licensee with increased traffic, and to enrich the licensor with royalties. So, when an Arizona guest enters a hotel with a Best Western sign, the likelihood that he or she will receive the same quality of lodging there as in every other Best Western is virtually nonexistent.

Lastly, KILP is not a "franchisee".  It is a "member" of Best Western International, Inc., a non-profit corporation. Best Western's membership documents *require* KILP to run its business by displaying Best Western Logos, *require* KILP to use Best Western's informational and booking platform and *require* it to display the Best Western logo. *See* Rules and Regulations, Exhibit 8.

**9. Discussions between counsel preliminary to Defendant's motion confirm that the motion is premature.**

Defendant accurately avows that the parties discussed this anticipated Motion to Dismiss. These discussions caused Plaintiff to conduct additional limited due diligence to determine whether the amendment would resolve the matter:

> Hi, Jennifer:
>
> Before I can properly analyze your views, and before you file a M2D, we both need to consider the following:
>
> 1. BW holds itself out as a non-profit; and
>
> 2. BW owns the brand Best Western Plus; and
>
> 3. BW sold the license to "Best Western Plus" to Hotelier Defendants under one of three scenarios:
>
> a. **Membership Agreements:** For hotels with full Member agreements (which include Best Western, Best Western Plus, Best Western Premier, Executive Residency by Best Western, Vīb, and GLō brands), hotel licensees are Members with voting rights and access to the Best Western platform. Members pay monthly fees, annual dues, advertising assessments, technology assessments, as well as other fees and charges.
>
> b. **Soft Brand Agreements:** For hotels with soft brand agreements (which include BW Premier Collection by Best Western and BW Signature

10

Collection by Best Western), hotel licensees are not Members, must maintain minimal branding standards, and have access to the Best Western Platform. These soft brand hotels generally pay an annual fee, a percentage based fee for revenue delivered, plus pass-through costs.

c. **Franchise Agreements:** For hotels with a franchise agreement (which include SureStay Hotel by Best Western, SureStay Plus Hotel by Best Western brands and SureStay Collection Hotel by Best Western brands), hotel franchisees are franchisees and not Members, must maintain minimal branding standards, and have access to the Best Western platform. Franchise hotels generally pay a royalty fee of 3% of GRR and a marketing fee of 5% of GRR, plus pass-through costs.

4. BW has membership agreements with AIH and Kingman Investments; and

5. The membership agreements incorporate BW's bylaws, Rules & Regulations, Best Western's New Construction & Refurbishment Guidelines; and

6. BW requires Hotelier Defendants to strictly adhere, under a threat of penalty, to specific operational and administrative Rules and Regulations. These Rules and Regulations govern every aspect of the operations of the hotel, including without limitation, administration, operation, signage, appearance, construction, lobby, front office, buildings, grounds, public areas, guest rooms, bathrooms, and breakfast services.

7. Through contracting, licensing and other arrangements, including Best Western's New Construction & Refurbishment Guidelines, BW controls the operations of Hotelier Defendants; and

8. BW owns the physical BW signage on the hotel; and

9. Best Western is the agent for Hotelier Defendants for purposes of (1) disclosing information relating to Hotelier Defendants' hotels and (2) booking rooms at Hotelier Defendants' hotels; (I realize that the membership agreement provides that BW is not an agent for Hotelier Defendants, but if the relationship walks like an agency, quacks like an agency, it is an agency.)

10. BW sells its membership interests primarily through membership agreements, corporate bylaws and Rules and Regulations. These documents provide that Hotelier Defendants are granted a license to use the brand name "Best Western" and use the Best Western signage on their hotels.

Can you send me the membership documents between BW and the Hotelier Defendants to confirm that my understanding of the relationship is accurate?

If my understanding of the relationship is significantly different from what I summarize above, I would amend my position. I continue to maintain, however, that if you slap a Mercedes emblem on a Yugo, it does not make the Yugo a Mercedes.

Counsel responded:

Peter-

This is not a time for discovery. There is nothing fraudulent, misleading or unlawful about the relationship between BWI and its members. As evidenced by your email below, you understand this relationship and we're not, in fact, misled. Moreover, as I pointed out previously, BWI's website makes clear that each hotel is independently owned and operated.  There was no agreement between the parties to commit a tort, and neither party committed a tort. Your Complaints' allegations in this regard are blatant falsehoods, and I suggest you amend. If you will not, we will file the MTDs today.

Thanks, Jennifer.

Exhibit 9. Counsel is correct. This is not the time for discovery, nor is it the time to file a motion to dismiss.

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Defendant's motion is not well taken.  If, however, the Court disagrees with the sufficiency of factual allegations, Plaintiff respectfully requests leave to amend.

RESPECTFULLY SUBMITTED this 21st day of January 2021.

**PETER STROJNIK**

_____
Peter Strojnik

ECF filed this 21st day of January 2021 and thence distributed through PACER.